**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CARLOS VILLAFANE,

                     *Pro Se* Plaintiff,

          -against-

MICHAEL SPOSATO, Nassau County Sheriff, and
ARMOR CORRECTIONAL HEALTH SERVICE,

                  Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 16-3674 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    **PRELIMINARY STATEMENT**

    *Pro se* Plaintiff Carlos Villafane ("Villafane" or "Plaintiff") brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging violations of the Fifth, Eighth and Fourteenth Amendments, as well as the Prison Litigation Reform Act. *See generally* Complaint ("Compl.") [DE 1]. Defendants Michael Sposato and Armor Correctional Health Services of New York s/h/a Armor Correctional Health Service (collectively, "Defendants") have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Notice of Motion [DE 19]. Judge Bianco referred Defendants' Motion to Dismiss to this Court for a Report and Recommendation as to whether the motion should be granted. DE 33.

## II.    BACKGROUND

### A.    Factual Background

The following factual allegations have been taken from Plaintiff's Complaint and the

Plaintiff's Opposition to Defendants' motion to dismiss.  Because Plaintiff is proceeding *pro se*,

the Court is obligated to construe his pleadings liberally "to raise the strongest arguments that

they suggest."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)

(per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d. Cir. 2006)) (collecting cases)

(internal quotation marks omitted).[1]   All facts alleged by Plaintiff are assumed to be true for

purposes of deciding the motion to dismiss and are construed in a light most favorable to

Plaintiff as the non-moving party.  *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471,

475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.

---

[1]       In construing a *pro se* plaintiff's pleadings liberally, "the Court may 'consider factual
allegations in the plaintiff's opposition papers to supplement the allegations in the
complaint.'"  *Williams v. Wellness Med. Care, P.C.*, No. 11-5566, 2013 WL 5420985, at *1 n.1
(S.D.N.Y. Sept. 27, 2013) (quoting *Salvatierra v. Connolly,* No. 09-3722, 2010 WL 5480756 at
*25 n. 3 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted)) (citing *Frith v. Hill*, No.
07–CV–5899, 2009 WL 3073716, at *19 n. 1 (S.D.N.Y. Sept. 23, 2009)), *report and
recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *see Smolen v. Fischer*, No.
12-1856, 2012 WL 3609089, at *1 (S.D.N.Y. Aug. 23, 2012) (citing *Erickson v. Pardus*, 551
U.S. 89, 94 (2007)) ("Although certain factual allegations in Smolen's opposition affidavit are
not contained in the complaint, this Court will deem the complaint amended to include those
allegations since Smolen is a pro se plaintiff."); *Sommersett v. City of New York*, 09-5916, 2011
WL 2565301, at *3 (S.D.N.Y. 2011); *Green v. City of N.Y. Dep't of Corr.*, No. 6-4978, 2008 WL
2485402, at *4 (S.D.N.Y. June 19, 2008)); *Ibok v. Sector*, No. 05-6584, 2006 WL 302336, at * 1,
n.1 (S.D.N.Y. Feb. 9, 2006) (citing *Fox v. Fischer,* No. 04-6718, 2005 WL 1423580 at *2 n.1
(S.D.N.Y. June 14, 2005), *aff'd*, 242 Fed. Appx. 759 (2d Cir. 2007); *Verley v. Goord,* No. 02
Civ. 1182, 2004 U.S. Dist. LEXIS 857, at *15-17 (S.D.N.Y. Jan. 22, 2004)) ("The Court may
consider the factual allegations in plaintiff's Response to supplement those in his complaint
because of the liberal standard afforded to the pleadings of pro se litigants.").

2003)); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012) (citing *LaFaro*, 570 F.3d at 475–76).

### 1.    *Plaintiff's Medical Issues*

On or about September 11, 2013, Plaintiff was taken to the Nassau County Correctional Center ("NCCC"), referred to by Plaintiff in his Complaint as the "Nassau County Jail." *See* Compl. § III.B.  At that time, Plaintiff had a broken left forearm.  *Id.* § III.C.  Despite informing the "medical department" about his condition, Plaintiff was "neglected intentionally without pain medication." *Id.*  On September 14, 2013, Plaintiff was taken to the "Nassau County University Hospital, where the doctor had [Plaintiff] x-rayed set [his] arm in a soft cast." *Id.*  A doctor advised Plaintiff that he needed surgery and told "the officials" to bring Plaintiff back to the hospital for surgery on September 17, 2013.  *Id.*  The NCCC did not produce Plaintiff for the surgery on that date and "still refused to give [Plaintiff] the said prescribed…pain medication." *Id.*

On September 24, 2013, Plaintiff was examined at the NCCC by a visiting orthopedist "who expressed shock" that Plaintiff "had not received any surgery." *Id.*  According to Plaintiff, the orthopedist "entered an order on my medical chart by directing a nurse to write down that it was extremely urgent that I have surgery." *Id.*  Once again, however, the NCCC "knowingly ignored, and intentionally did denied [sic] [Plaintiff] the proper medical procedures and also continued to deny…the pain medication or any type of medication to aliviate [sic] the pain." *Id.*  On October 9, 2013, Plaintiff was transported to Nassau University Medical Center where his arm was again x-rayed.  *Id.*  The doctor told him that his arm was in fact broken.  *Id.*  The doctor also told him that because he had not received surgery, his arm would have to be rebroken "and that the surgery cost too much money and the facility wouldn't pay." *See id.*  Plaintiff's arm was then set in a hard cast and Plaintiff complained again about the pain.  *Id.*

Around the end of October 2013, Plaintiff appeared before Judge Hurley in connection with his criminal case. *See id.* Plaintiff complained to his lawyer about the NCCC's treatment of him. *Id.* Plaintiff states that his lawyer spoke to Judge Hurley and that Judge Hurley recommended that Plaintiff "be transferred to the Metropolitan Detention Center in Brooklyn, New York." *Id.*

On November 5, 2013, Plaintiff was transferred to the Metropolitan Detention Center ("MDC"). *Id.* Sometime thereafter, MDC officials transported Plaintiff to the "[B]rooklyn Medical Center and Kingsbrook Hospital from 2014 through 2015." *Id.* At the Brooklyn Medical Center, Plaintiff underwent the surgery that he needed — his arm was rebroken and set with two metal plates and metal screws. *Id.* According to Plaintiff, "my arm is not the same I don't have 100% use of my left wrist and my left hand and I am in constant pain." *See id.*

### 2. *Grievances*

In his Opposition to the Defendants' Motion to Dismiss, Plaintiff states that while detained at the NCCC, he lodged numerous complaints about his left arm as well as other issues, through grievance forms and sick-call requests. *See* Plaintiff's Opposition ("Pl's. Opp'n") [DE 30] at 4-5. Plaintiff represents that he could not tell what the officer wrote on most of the complaint forms and that there were times when the officer informed Plaintiff that he "had to sign the form because soon [he would] be taken to the Hospital." *Id.* at 4. Plaintiff further maintains that on "some of the forms the officer wrote that the Plaintiff Refuse [*sic*] to sign while writing a later date." *Id.* Plaintiff asserts that those statements are not true because he had, in fact, signed the form on an earlier date. *Id.* Plaintiff points out that defendants' counsel referred to the Prison Litigation Reform Act ("PLRA") in the motion papers. *Id.* According to Plaintiff, the PLRA "makes it harder for prisoners to file lawsuits in federal court." *Id.* Plaintiff adds that

the fact is that the Plaintiff was <u>Transferred</u> from a county holding facility to a Federal Transcient [sic] facility which is A different jurisdiction, with different Rules and Regulation, to wit your complaints go to Washington D.C. <u>besides</u> <u>your</u> Honor <u>the</u> <u>Plaintiff</u> <u>was</u> <u>Released</u>, he was <u>Free</u> <u>when</u> <u>he</u> <u>submitted</u> <u>this</u> <u>Law</u> <u>Suits</u> <u>so</u> I am Asking your Honor to Please don't dismiss my lawsuit Please Allow a jury to decide.

*Id*. at 6.

### 3.   *Claims Set forth in the Instant Action and Relief Sought*

Plaintiff represents that he has filed the instant action against Armor Correctional Health Services of New York ("Armor") for intentionally failing to provide him with "prop[]er medical care" and against Sheriff Michael Sposato for "allowing [Armor] to do so" and for not "monitoring [the] medical department."  Compl. § II.D.  According to Plaintiff, Defendants' conduct constitutes violations of the Eighth and Fifth Amendments of the Constitution, the Equal Protection Clause and the Prison Litigation Reform Act.  *Id*. § II.B.  Plaintiff seeks $5,000,000 in monetary damages to compensate him for his pain and suffering, mental anguish and inability to have full use of his left hand.  *Id*. § IV.

### B.   **Procedural History**

*Pro se* Plaintiff Villafane commenced this action by filing a Complaint on June 24, 2016. *See* DE 1.  By Order entered July 6, 2016, Judge Bianco who was assigned to this civil case, granted Plaintiff's Motion for Leave to Proceed *in Forma Pauperis*.  DE 5.  The Nassau County Attorney's Office, on behalf of Nassau County Sheriff Michael Sposato, filed an Answer to the Complaint on September 9, 2016.  DE 12.  On October 6, 2016, the law firm of Lewis Brisbois Bisgaard and Lewis ("Lewis Brisbois") filed a letter application to Judge Bianco seeking a pre-motion conference for purposes of moving to dismiss the Complaint against Armor.  DE 15.  On October 12, 2016, Judge Bianco issued an Order waiving the pre-motion conference requirement and setting a briefing schedule on Armor's motion to dismiss.  DE 16.  Lewis Brisbois filed the

motion to dismiss on November 14, 2016 on behalf of <u>both</u> defendants.  DE 19.  Pursuant to

Judge Bianco's Scheduling Order, Plaintiff's Opposition to the motion was due to be filed by

December 28, 2016, and Defendants' Reply, by January 11, 2017.   DE 16.

On December 19, 2016, Plaintiff notified the Court of a change in his address.  DE 22.

Judge Bianco posted an Electronic Order on December 23, 2017 stating that due to Plaintiff's

address change, Defendants were unable to serve him with a copy of their motion.  *See*

12/23/2016 Electronic Order.  Judge Bianco set a revised briefing schedule, directing Plaintiff to

file his Opposition by January 25, 2017 and Defendants to file their Reply by February 8, 2017.

*Id*.

On January 9, 2017, Plaintiff filed a motion for extension of time to file his Opposition,

which Judge Bianco granted.  DE 26, 27.  The deadline for Plaintiff to submit his Opposition was

extended to February 24, 2017.  The filing date for the Reply was extended to March 10, 2017.

DE 27.  On March 3, 2017, Judge Bianco issued an Order directing Plaintiff to file his

Opposition by March 20, 2017, or alternatively, to send a letter communicating to the Court why

no Opposition had been filed.  DE 28.  The Court warned Plaintiff that a failure to respond may

result in dismissal of his case, with prejudice, for failure to prosecute his claims.  *Id*.  On

March 17, 2017, Plaintiff filed a letter explaining that he mailed a copy of his Opposition to

Defendants via Fedex on February 24, 2017.  DE 29.  Plaintiff further stated that he requested

additional time to respond to Defendants' motion so that he could obtain medical records from

two hospitals where he received treatment.  *Id*.  Plaintiff's Opposition was filed with the Clerk's

Office on March 23, 2017.  DE 30.  In addition to arguing the merits of his case, Plaintiff

informed the Court that the 87 pages of unpublished opinions provided to him by the Defendants

were not legible. *Id*. Plaintiff also requested more time to respond to Defendants' Motion to Dismiss. *Id*.

Judge Bianco issued an Order on March 23, 2017 (1) informing Plaintiff that the Court was in receipt of his Opposition and (2) directing Defendants to file their Reply by April 7, 2017. *See* DE 31. Defendants' Reply was filed on April 3, 2017. DE 32. By Order dated April 6, 2017, Judge Bianco referred Defendants' Motion to Dismiss to this Court for a Report and Recommendation as to whether the motion should be granted. DE 33.

On April 12, 2017, the Court received a letter from Plaintiff requesting additional time to research, gather further evidence and respond to Defendants' motion to dismiss. DE 34. The Court directed counsel for Defendants to promptly serve Plaintiff with new, legible copies of the unpublished opinions, and/or opinions exclusively on computerized databases, in accordance with Local Civil Rule 7.2. *See* 4/19/2017 Electronic Order. Those opinions were mailed to Plaintiff at 400-430 30th Street, Room 3028, New York, NY 10016. *See* April 28, 2017 Affidavit of Service [DE 35].

In light of Plaintiff's asserted efforts to obtain his medical records, as set forth in his requests for additional time to respond to Defendants' motion, the Court issued an Order on May 1, 2017 directing Defendants to furnish the Court and Plaintiff with copies of various medical records concerning the care/treatment of Plaintiff by Armor, the NCCC, Nassau University Medical Center, the Metropolitan Detention Center, and the Brooklyn Medical Center and/or Kingsbrook Hospital. *See* DE 36.

On May 8, 2017, counsel for Defendants filed a letter explaining that the unpublished opinions which were previously mailed to Plaintiff had been returned to their office by the postal service. DE 38. A copy of the envelope in which the opinions were sent reflects two stamps —

"Return to Sender" and "Unable to Forward." DE 38. In response to this filing, efforts were made to set up a conference call between counsel for the Defendants, Plaintiff and the Court. Defendants' counsel tried reaching Plaintiff via telephone using the number listed on the docket: (516) 244-7329. *See* DE 22. Counsel was transferred to Plaintiff's voicemail. Subsequently, on May 15, 2017, this Court's Law Clerk called Plaintiff at the same number and was also forwarded to Plaintiff's voicemail. At the Court's direction, the Law Clerk left a message advising Plaintiff to contact Chambers immediately or risk having his case dismissed. When the Court did not receive a return call from Plaintiff, the undersigned, along with the Law Clerk, personally called Plaintiff on June 1, 2017 and was forced to leave a voicemail directing Plaintiff to call Chambers immediately. By Order dated June 19, 2017, the Court issued an Order to Show Cause directing Plaintiff to appear on July 11, 2017 and show cause why this case should not be dismissed for his failure to prosecute his claims and failure to comply with the Court's Orders. DE 39.

Plaintiff appeared before the Court at the July 11, 2017 Show Cause Hearing and provided the Court with an updated telephone number and a corrected address. *See* DE 45. During that conference, Plaintiff reiterated his request for additional time to respond to Defendants' motion. *Id*. He explained to the Court that he was in the process of obtaining medical records from St. Barnabas Hospital as well as the minutes from a 2013 appearance before Magistrate Judge Brown in his criminal case. *Id*. The Court directed Plaintiff to send a letter to the Court within one week of the Court's conference (1) setting forth why he should be permitted to add information to his response at this time, and (2) identifying the particular documents he wishes to use and why those documents support his claims. *Id*.

8

Counsel for the defendants filed an Affidavit of Service on July 11, 2017 stating that Plaintiff had been served by mail with copies of the unpublished opinions at Plaintiff's corrected address. DE 44. By letter dated July 19, 2017, Plaintiff confirmed that he had received copies of the medical records from the Defendants. *See* DE 48. In addition to arguing the merits of his case, Plaintiff responded to the directives given during the July 11, 2017 Show Cause Hearing. *See id*. Plaintiff stated that he is once again requesting an extension of time to supplement his Opposition so that he may gather all of his medical records. *Id*. According to Plaintiff, this process is taking him a long time because he is representing himself and is still searching for an attorney to assist him with his case. *Id*. Plaintiff referred to certain records from St. Barnabas Hospital and explained that they demonstrate that the injury to his left forearm occurred sometime in "June/July or August 6th 2013." *Id*. at 2. In addition, Plaintiff is still attempting to get a copy of the minutes from his September 11, 2013 arraignment before Judge Brown. *Id*. According to Plaintiff, Judge Brown told him "don't worry Mr. Villafane we are sending you to a facility to [immediately] take care of your injuries." *Id*. Defendants initially providing him with illegible copies of the unpublished opinions slowed his ability to read and research Defendants' motion. *Id*. at 3

In the balance of DE 48, Plaintiff stated that (1) the seriousness of the surgery he had on his wrist now "interferes with the movement of his left elbow and inner forearm"; (2) he has played the drums since age 8 or 9 and now it is impossible for him "to play music, keep a beat or roll, my wrist constantly goes numb and I have to keep moving it as to get blood flow"; (3) the size of the Defendants' motions "would take years because I have the right to read and research every cited or uncited case…"; (4) he has continued to look for a lawyer and feels that "as a pro se litigant, I have been stripped of my own defense. I am praying that this court would allow me

to continue to fight this case.  My body's been Reconstructed, I have screws on my Right knee because I don't have no Right Knee Caps"; (5) "I also have movement problems because of all the metal rods and screws, then I don't have any balance or else I'll fall I just had 2 eye surgery it isn't easy for me to run around and do all this work because I need help going down and up the stairs. Then I had to beg for money to get copies remember so I could put all these legal arguments and papers together with the defendants motion to dismiss because I didn't know the law and I had no one to help me…."  *Id*. at 3-5.  According to the Plaintiff, the only thing he was still missing were the minutes of his arraignment before Magistrate Judge Brown.  *Id*. at 5.

On August 2, 2017, Defendants filed their Opposition to Plaintiff's request.  DE 52. Counsel urges the Court to deny Plaintiff's request to supplement his Opposition at this time.  *Id*. Counsel points out that although Plaintiff alleges Defendants are asserting that his broken left forearm originated from a 2004 motor vehicle accident, Defendants make no such allegation in their motion papers.  *Id*.  Instead, Defendants state that Plaintiff arrived at the NCCC ***with*** the broken left forearm, which Plaintiff himself concedes in his Complaint.  *Id*.  According to Defendants, establishing that Plaintiff's injury occurred in 2013 as opposed to during a motor vehicle accident in 2004 "does absolutely nothing to bolster his claim as to whether or not Armor provided him with inadequate medical treatment."  *Id*.  Defendants maintain that Plaintiff is "simply employing a delay tactic to prolong the action for as long as possible until he either finds an attorney or the Armor defendants settle."  *Id*.

Having reviewed and considered Plaintiff's July 19, 2017 request, as well as Defendants' opposition, the Court is denying Plaintiff's application to further supplement his Opposition at this time.  Plaintiff is free to continue to seek his records from St. Barnabas Hospital.  However, the Court will not further delay the progress of this case waiting for them.  The St. Barnabas

records, even assuming they show that Plaintiff's injury originated in 2013, do not impact the issues underlying Defendants' Motion to Dismiss.

With respect to Plaintiff's reference to the unpublished opinions, the Court had Defendants mail legible copies to Plaintiff on April 19, 2017. *See* 4/19/2017 Electronic Order. The mailing was done on April 28, 2017. DE 35. On May 8, 2017, Defendants notified the Court that those opinions had been returned as undeliverable. *See* DE 38. First the Defendants and then the Court itself attempted to contact Plaintiff over the course of several weeks to ensure that he had received copies of the opinions. *See* DE 39. As noted, it was not until the July 11, 2017 Show Cause Hearing that Plaintiff provided the Court with his updated telephone number and correct address. DE 45. Defendants mailed the unpublished opinions to the corrected address that same day. *See* DE 44.

In his most recent request for additional time, however, Plaintiff fails to substantively discuss anything from those cases which would convince the Court to further extend the time to oppose Defendants' motion. Given all of these factors, there is no justification for further delay. The Court is terminating the outstanding requests that Plaintiff be provided still more time to oppose Defendants' motion to dismiss. *See* DE 29, 34, 41, 50.

## III.  STANDARD OF REVIEW

Defendants move for dismissal pursuant to Rule 12(b)(6). Defendant Sposato, however, filed an Answer to Plaintiff's Complaint on September 8, 2016, prior to filing the instant motion. The pleadings with respect to Defendant Sposato are therefore closed and as such his motion should have been brought as a Motion for Judgment on the Pleadings, pursuant to Rule 12(c). Fed. R. Civ. P. 12(c). However, the Court applies the same standard of review when analyzing a motion to dismiss pursuant to Rule 12(b)(6) as it does when reviewing a motion for judgment on the pleadings pursuant to Rule 12(c). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.

11

2006) (citing *Karedes v. Ackerley Group, Inc*., 423 F.3d 107, 113 (2d Cir. 2005)); *Stern v. City of New York*, No. 12-5210, 2015 WL 918754, at \*2 (E.D.N.Y. Mar. 3, 2015) (citing *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir. 2004)) ("The same legal standard applies to a Rule 12(b)(6) motion as a Rule 12(c) motion."); *Rubino v. Town of Babylon*, No. 09-5187, 2012 WL 928252, at \*1 (E.D.N.Y. Mar. 19, 2012) (citing *Livant v. Clifton*, 272 Fed. Appx 113, 115 (2d Cir. Apr. 7, 2008); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)) (finding that although the County filed a motion for judgment on the pleadings pursuant to Rule 12(c) when it had not answered the Complaint, the Court "need not decide the issue" since the standard for Rule 12(c) and Rule 12(b)(6) motions are the same); *Transamerica Fin. Life Ins. Co. v. Session*, No. 10-1328, 2010 WL 4273294, at \*2 (S.D.N.Y. Oct. 28, 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)) (citing *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010)) ("To survive a motion under Rule 12(c) or Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"); *Scott v. J. Anthony Cambece Law Office, P.C.*, 600 F. Supp. 2d 479, 481 (E.D.N.Y. 2009) (citing *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126–27 (2d Cir. 2001)) (noting that "the standard for granting a Rule 12(c) motion is identical to that employed when analyzing a Rule 12(b)(6) motion.").  Notwithstanding Defendant Sposato's filing of his motion under Rule 12(b) instead of Rule 12(c), the Court will review the motion on its merits.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co*., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (quoting *Chambers v. Time Warner, Inc*., 282 F.3d 147,

152 (2d Cir. 2002)) (internal quotation marks omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chase Group Alliance LLC v. City of New York Department of Finance*, 620 F.3d 146, 148 (2d Cir. 2010); *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir. 2010)) (citing *Sims v. Blot*, 534 F.3d 117, 133 (2d Cir. 2008)).  The plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007), *rev'd on other grounds sub nom*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (citing *Ashcroft*, 129 S.Ct. 1937, 1949-50) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level[ ]'").

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679; *see id*. at 678 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152–53 (2d Cir. 2002) (quoting *Brass v. American Film Technologies, Inc*., 987 F.2d 142, 150 (2d Cir. 1993)); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013), *certified question accepted sub nom. Thelen LLP. v. Seyfarth Shaw LLP*, 22 N.Y.3d 1017, 4 N.E.3d 359 (2013), *and certified question answered*, 24 N.Y.3d 16, 20 N.E.3d 264 (2014)).

In addition, where, as here, a plaintiff is proceeding *pro se*, the complaint must be considered under a more lenient standard than that accorded "formal pleadings drafted by lawyers." *Bellamy v. Mt. Vernon Hosp*., No. 07 Civ. 1801, 2009 WL 1835939, at *3 (S.D.N.Y. June 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), *aff'd*, 387 Fed. Appx. 55 (2d Cir. 2010). Therefore, a court must construe a *pro se* plaintiff's pleading broadly and interpret it to raise the strongest arguments that it suggests. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *Boykin v. KeyCorp*, 521 F.3d 202,

14

216 (2d Cir. 2008)) (holding that when a plaintiff proceeds pro se, the district court "is obliged to construe his pleadings liberally" and noting that "the dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). "However, mere conclusions of law or unwarranted deductions need not be accepted." *Alston v. Sebelius*, No. 13-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)).

Although "courts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss, some courts have construed the mandate to read a pro se plaintiff's papers liberally as allowing for consideration of such allegations." *Rolle v. Educ. Bus Transp., Inc*., No. 13-1729, 2014 WL 4662256, at *9 (E.D.N.Y. Aug. 8, 2014) (collecting cases), *report and recommendation adopted by*, 2014 WL 4662267 (E.D.N.Y. Sept. 17, 2014); *Ibok*, 2006 WL 302336, at * 1, n.1 (citing *Fox v. Fischer,* No. 04-6718, 2005 WL 1423580 at *2, n.1 (S.D.N.Y. June 14, 2005) *aff'd*, 242 Fed. Appx. 759 (2d Cir. 2007); *Verley v. Goord,* No. 02-1182, 2004 WL 526740, at *5 (S.D.N.Y. Jan. 22, 2004)) ("The Court may consider the factual allegations in plaintiff's Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants."). In the instant case, the Court, in furtherance of its obligation to construe *pro se* pleadings liberally, will consider the factual allegations set forth in Plaintiff's opposition papers to the extent such facts are related to and consistent with his Complaint. *Rosario v. New York City*, No. 12-4795, 2013 WL 2099254, at *1-2 n.1 (S.D.N.Y. May 15, 2013) (citing *Braxton v. Nichols*, No. 08-8568, 2010 WL 1010001, at * 1 (S.D.N.Y. Mar. 18, 2010); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987)) ("[B]ecause [the plaintiff] is proceeding *pro se*, the Court also considers factual allegations contained in [his] two submissions in opposition to defendants' motion to dismiss, to the extent consistent with the

Complaint."); *see Harris v. NYU Langone Med. Ctr.*, No. 12-0454, 2013 WL 3487032, at *2 n.6 (S.D.N.Y. July 9, 2013) ("[B]ecause Harris is proceeding pro se, the Court may consider factual allegations contained in her submissions in opposition to Defendants' motions to dismiss, to the extent they are consistent with the [Complaint]."), *report and recommendation adopted as modified*, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); *see also Malik v. City of New York*, No. 11-6062, 2012 WL 3345317, at *5 (S.D.N.Y. Aug. 15, 2012) (collecting cases) ("The mandate to read a *pro se* plaintiff's papers liberally, however, makes it appropriate to consider factual allegations in [the plaintiff's] opposition papers, in addition to those in his Complaint, in resolving the motion to dismiss."); *Aponte v. Buono*, No. 11-1077, 2011 WL 6812924, at *3 (E.D.N.Y. Dec. 28, 2011) (citing *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009)); *Sommersett*, 2011 WL 2565301, at *3 (quoting *Milano v. Astrue*, No. 05 Civ. 6527, 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007)) ("'[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations.'").

Here, the *pro se* Plaintiff raises certain allegations for the first time in his Opposition to Defendants' motion, which the Court will nonetheless consider since they are related to the Complaint.  However, in connection with those allegations, Plaintiff seeks to introduce certain documents for the Court to consider.  The Court must therefore determine whether, pursuant to Rule 12(d), Defendants' motions should be converted to motions for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).  "The district court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form." *M.J.M. Exhibitors, Inc. v. Stern (In re G. & A. Books. Inc.)*, 770 F.2d 288, 295 (2d Cir. 1985). "The essential inquiry in determining whether it is appropriate to convert a motion [to dismiss]

into a motion for summary judgment is 'whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Costor v. Sanders*, No. 07-11311, 2009 WL 1834374, at *2 (S.D.N.Y. June 16, 2009) (quoting *Krijn v. Pogue Simone Real Estate Co*., 896 F.2d 687, 689 (2d Cir. 1990)); accord *Glover v. Greenman*, No. 11-9122, 2013 WL 1294698, at *3 (S.D.N.Y. Apr. 1, 2013). "Resolution of this issue will necessarily depend largely on the facts and circumstances of each case." *M.J.M. Exhibitors*, 770 F.2d at 295 (citing *Dayco Corp. v. Goodyear Tire & Rubber Co*., 523 F.2d 389, 393 (6th Cir. 1975))

"Ordinarily, formal notice is not required where a party should reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." *Hernández v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Villante v. Dep't of Corrections of City of New York*, 786 F.2d 516, 521 (2d Cir. 1986)) (brackets and quotation marks omitted); *see Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)) ("A party is deemed to have notice that a motion may be converted into one for summary judgment if that party 'should reasonably have recognized the possibility' that such a conversion would occur.").  However, where, as here, the non-movant is proceeding *pro-se*, "[n]otice is particularly important because the *pro se* litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues. Accordingly, *pro se* parties must have unequivocal notice of the meaning and consequences of conversion to summary judgment." *Hernández*, 582 F.3d at 307-08 (quoting *Beacon Enters.,*

*Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983)); accord *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) (citing *Hernández*, 582 F.3d at 307).

Rule 12.1 of the Local Civil Rules of the United States District Courts for the Eastern and Southern Districts of New York ("Local Civil Rule 12.1") provides, in relevant part, as follows:

> A represented party moving . . . for judgment on the pleadings against a party proceeding pro se, who refers in support of the motion to matters outside the pleadings as described in Fed. R. Civ. P. 12(b) or 12(c), shall serve and file the . . . notice [provided therein] with the full text of Fed. R. Civ. P. 56 attached at the time the motion is served. If the Court rules that a motion to dismiss or for judgment on the pleadings will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56, and the movant has not previously served and filed the notice required by this rule, the movant shall amend the form notice to reflect that fact and shall serve and file the amended notice within fourteen days of the Court's ruling.

Local Civil Rule 12.1. Courts in this district have held that notice pursuant to Local Civil Rule 12.1 provides sufficient notice to *pro se* parties that a motion to dismiss may be converted to a motion for summary judgment. *See Wiggins v. Figueroa*, No. 13-1731, 2015 WL 729730, at *1 (E.D.N.Y. Feb. 18, 2015) (citing *Hernández*, 582 F.3d at 308 n.2); *Lawrence v. Sharkey*, No. 13-173, 2015 WL 2213274, at *3 (E.D.N.Y. May 8, 2015); accord *Loccenitt v. City of New York*, No. 10-8319, 2012 WL 5278553, at *3 (S.D.N.Y. Oct. 22, 2012) (citing *Goodwin v. Solil Mgmt. LLC*, 10-5546, 2012 WL 1883473, at *2 (S.D.N.Y. May 22, 2012)) ("Courts in this district have concluded that a notice pursuant to Local Civil Rule 12.1 suffices to satisfy the requirement that parties be afforded a chance to offer affidavits and other evidence.").

Ultimately, "[a] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss [or for judgment on the pleadings] . . . ." *M.J.M. Exhibitors*, 770 F.2d at 295 (citation

omitted);  *see also Reliance Ins. Co. v. Polwision Corp.*, 474 F.3d 54, 57 (2d Cir. 2007) (finding

that it was not error for the district court to consider evidence outside of the complaint in

resolving a Rule 12(c) motion "without explicitly giving notice that it was converting the Rule

12 motion to a Rule 56 motion[,]" because it was "clear from the record . . . that [the non-moving

party] knew additional factual considerations were being considered and, in fact, responded with

its own evidentiary submissions");  *Sira*, 380 F.3d at 68 ("By attaching to their motion extensive

materials that were not included in the pleadings, defendants plainly should have been aware of

the likelihood of such a conversion.").  Thus, a party who relies on extrinsic material to oppose

the motion cannot later claim "that they were deprived of an adequate opportunity to provide the

materials they deemed necessary to support or respond to the motion."  *Soller*, 2015 WL 500492,

at *8 (citing *Sira*, 380 F.3d at 68).

Here, Defendants have not requested that their motion be converted to one for summary

judgment and thus have not provided the Plaintiff with a Local Civil Rule 12.1, which is

unnecessary here.  Since Plaintiff is proceeding *pro se*, the Court will not assume that his

submission of extrinsic materials constitutes proof that Plaintiff is aware of the summary

judgment process and the potential consequences of conversion.  *See Hernández*, 582 F.3d at

307-308 (citing *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983)) (declining to

convert the defendants' motion to dismiss to one for summary judgment where the plaintiff

submitted "extensive affidavits with supporting documents addressing exhaustion.").  For these

reasons, the Court declines to convert Defendants' motion to one for summary judgment.  *See*

*Environmental Servs., Inc. v. Recycle Green Servs*., 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014)

(quoting *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (citations omitted))

("Federal courts have 'complete discretion to determine whether or not to accept the submission

of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment.") (internal quotation marks omitted).  For purposes of judicial economy, and in fairness to the Plaintiff, the Court will treat the motion to dismiss brought by Defendants as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## IV.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

#### 1.   *Legal Standard Under the PLRA*

The PLRA provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures."  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (citation omitted) (quoting *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)).

In finding that the PLRA applies to all inmate actions concerning prison life, *see Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Supreme Court "did not distinguish between pretrial and post-trial detainees."  *United States v. Khan*, 540 F. Supp. 2d 344, 349 (E.D.N.Y. 2007) (citing *Porter*, 534 U.S. at 532, 122 S.Ct. 983; *George v. Morrisson-Warden*, No. 6-3188, 2007 WL 1686321 (S.D.N.Y. 2007)); *Baez v. Parks*, No. 02-5821, 2004

WL 1052779, at *5 (S.D.N.Y. May 11, 2004) (citing *United States v. Al–Marri*, 239 F.Supp.2d 366, 367–68 (S.D.N.Y. 2002); *Rivera v. State of New York*, No. 96 Civ. 7697, 1999 WL 13240, at *4–5 (S.D.N.Y. Jan. 12, 1999); *Samuels v. Jackson*, No. 97 Civ. 2420, 1999 WL 92617, at *2 n.3 (S.D.N.Y. Feb. 22, 1999)) ("[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees.").  As such, similar to a convicted prisoner, a pre-trial detainee is generally required to exhaust his administrative remedies prior to filing an action in federal court.  *See Baez*, 2004 WL 1052779, at *5 (citing *Porter*, 534 U.S. at 532).

Although the language of Section 1997(e)(a) is mandatory, the "edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross v. Blake*, 136 S. Ct. 1850, 1856, 195 L. Ed. 2d 117 (2016); *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) ("As the Supreme Court recently made clear in holding that courts may not excuse a prisoner's failure to exhaust because of 'special circumstances,' 'mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'"). "[A]side from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Ross*, 136 S.Ct. at 1856.  The Second Circuit has held that "[a]n administrative procedure is unavailable when: (1) 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) it is 'so opaque that is becomes, practically speaking, incapable of use'; or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Riles*, 656 F. App'x at 580 (quoting *Ross*, 136 S.Ct. at 1859-60).

Despite the PLRA's strict application, the Supreme Court has made clear that prisoners "are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v.*

*Bock*, 549 U.S. 199, 216 (2007).  Rather, "failure to exhaust is an affirmative defense under the

PLRA" that must be raised and proven by defendants.  *Id.*  "Dismissal under Rule 12(b)(6) for

failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the

complaint."  *Roland III v. Smith*, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012) (citing *McCoy v.*

*Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)); *see Jandres v. Armor Health Care Inc.*, No.

12-3132, 2014 WL 1330655, at *4 (E.D.N.Y. Mar. 31, 2014); *see also Barrett v. Armor Corr.*

*Health, Inc.*, No. 13-1063, 2014 WL 1220756, at *5 (E.D.N.Y. Mar. 20, 2014) (quoting *Rivera v.*

*Anna M. Kross Ctr.*, No. 10-8696, 2012 WL 383941, at *2 (S.D.N.Y. Feb. 7, 2012)) (citing

*Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 92 (E.D.N.Y. 2013)).

### 2.    *Application to the Facts*

Defendants argue that the Complaint must be dismissed on the grounds that "there is no

allegation or any indication that [Plaintiff] brought his complaints to the attention of NCCC

officials that would have afforded them the time and opportunity to address them."  Armor

Correctional Health Services of New York, Inc. and Sheriff Michel Sposato's Memorandum of

Law in Support of their Motion to Dismiss the Complaint ("Defs.' Mem.") [DE 19-2] at 10.  In

opposing the motion, Plaintiff states that while at the NCCC, he filed grievance forms and sick

call requests in which he complained about his arm as well as other issues.  Pl's. Opp'n at 4.

Plaintiff explained that he could not figure out what the officer wrote on most of the complaint

forms and there were times when the officer informed Plaintiff that he "had to sign the form

because soon [he would] be taken to the Hospital."  *Id.* at 3.  Sometimes the officer would write

on the form a note that Plaintiff refused to sign it when, in fact, Plaintiff had signed the form on

an earlier date.  *Id.*  Moreover, in connection with his discussion of the PLRA and his efforts to

comply with it, Plaintiff stated that he was transferred from a "county holding facility" to a

"federal trans[]ient facility, which is a different jurisdiction, with different rules and regulations." *Id*.

In their Reply, Defendants argue that Plaintiff's Opposition fails to set forth a "meaningful rebuttal to the Defendants' position." Reply Memorandum of Law in Further Support of the Defendant's Motion to Dismiss the Complaint ("Defs.' Reply") [DE 32] at 2. Defendants reject what they characterize as Plaintiff's attempt to attribute any deficiencies under the PLRA to his being transferred to a different facility. *See id*. at 2. They point out that Plaintiff, by his own "admission," arrived at the NCCC on September 11, 2013, and was not transferred to another facility until November 5, 2013. *Id*. Based on this timeline, Defendants argue that Plaintiff had approximately two months to file a grievance and any subsequent appeal. *Id*. They further note that Plaintiff does not challenge the three-tiered prisoner grievance procedure utilized by the NCCC which is set out in detail in Defendants' opening papers. *Id*. at 3.

As discussed above, Plaintiff is not required to plead specific facts in the Complaint setting forth exhaustion. *Jones*, 549 U.S. at 216; *Roland v. Smith*, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Therefore, to the extent Defendants seek dismissal on the grounds that Plaintiff does not allege that he exhausted the administrative remedies available to him, that argument is unavailing. Dismissal is "appropriate only where nonexhaustion is apparent from the face of the complaint." *Zamani v. Nassau Cty.*, No. 14-5606, 2015 WL 9943257, at *3 (E.D.N.Y. Dec. 16, 2015) (quoting *Roland v. Smith*, 907 F.Supp.2d 385, 388 (S.D.N.Y.2012) (citing *Cephas v. Nassau Cty. Corr. Ctr.*, No. 12–CV–1445, 2014 WL 537576, at *4 (E.D.N.Y. Feb. 10, 2014)) (rejecting defendants' argument that the plaintiff "failed to exhaust his administrative remedies

in that there is no indication or allegation that plaintiff undertook any further action to complain

of or appeal any dissatisfaction with any of [his grievances]....") (internal quotation marks

omitted), *report and recommendation adopted*, No. 14-5606, 2016 WL 393934 (E.D.N.Y. Jan.

28, 2016).  Non-exhaustion has been deemed to be apparent from the face of a Complaint where,

for example, the plaintiff explicitly alleged that his grievance was under review by Internal

Affairs at the time the Complaint was filed, *Joseph v. Nassau Cty. Corr. Facility*, No. 15-7010,

2016 WL 3033725, at *4 (E.D.N.Y. May 26, 2016), or where the Court determined, through a

review of exhibits attached to the plaintiff's Complaint, that the plaintiff failed to properly appeal

the outcome of his grievances in accordance with the facility's protocol — the "plaintiff either

accepted the grievance coordinator's decision and did not appeal, or refused to sign the reviewed

grievance forms and did not appeal."  *Young v. Sposato*, No. 12-2850, 2014 WL 109083, at *7

(E.D.N.Y. Jan. 13, 2014).

Unlike the circumstances in *Joseph* and *Young*, the Court finds here that here non-

exhaustion is not apparent from the face of Plaintiff's Complaint.  At no point does Plaintiff

affirmatively state in any of his submissions "that he failed to follow all the required grievance

procedures."  *Randolph v. N.Y.C. Dep't of Corr.*, No. 05-8820, 2007 WL 2660282, at *7

(S.D.N.Y. Sept. 7, 2007)), *report and recommendation adopted*, No. 14-06468, 2016 WL

680822 (S.D.N.Y. Feb. 18, 2016); *see, e.g.*, *Groenow v. Deputy Warden of OBCC Williams*, No.

13-3961, 2014 WL 941276, at *4 (S.D.N.Y. March 11, 2014).  In fact, Plaintiff makes no

mention in his Complaint of the NCCC's grievance procedure or his compliance with it, likely

because the standardized 42 U.S.C. Section 1983 complaint form utilized by *pro se* plaintiffs like

Mr. Villafane do not prompt the individual to discuss his efforts to exhaust administrative

remedies.  It is not until his Opposition that Plaintiff asserts he filed grievance forms and sick

call requests while detained at the NCCC.  Pl's. Opp'n at 4.  Plaintiff states that (1) he often could not read what the officers wrote on the forms, (2) officers told him he had to sign the forms since he would be taken to a hospital, and (3) officers sometimes indicated on the form that Plaintiff refused to sign when, according to Plaintiff, he actually did.  *Id*.  "Where a prisoner indicates that he has taken some steps toward exhaustion, district courts will normally not infer from his silence that he failed to take the remaining steps that full exhaustion would require."  *Huggins v. Schriro*, No. 14-6468, 2015 WL 7345750, at *3 (S.D.N.Y. Nov. 19, 2015) (citing *Rodriguez v. Warden*, *Metropolitan Correctional Facility*, No. 13-3643, 2015 WL 857817 at *3–4 (S.D.N.Y. Feb. 27, 2015); *Randolph*, 2007 WL 2660282, at *8; *Groenow*, 2014 WL 941276, at *3 (S.D.N.Y. March 11, 2014)); *id*. (quoting *Wesley v. Muhammad*, No. 05-5833, 2008 WL 123812, at *3 (S.D.N.Y. Jan. 10, 2008)), *report and recommendation adopted*, 2008 WL 236974 (S.D.N.Y. Jan. 28, 2008)) ("'[A] pro se plaintiff's pleading references to various efforts that he has made to bring alleged prison violations to the attention of the prison authorities cannot be treated as tantamount to an admission that he had not exhausted his remedies.'"); *but see Ghee v. Warden Ramos*, No. 13-632, 2013 WL 7018543, at *1–2 (S.D.N.Y. Dec. 4, 2013) (dismissing the plaintiff's complaint where he left blank a section of the form complaint that set forth the following: "[w]hat steps, if any, did you take to appeal that decision? Describe all appeals to the highest level of the grievance process[]").

Moreover, according to Plaintiff, he was instructed to sign a complaint form so that he would be taken to a hospital.  Accepting this allegation as true, which the Court must do at this juncture, it is not unreasonable to infer that Plaintiff's request to be taken to a hospital was accepted.  Where a grievance is decided in an inmate's favor, but the facility fails to implement the administrative decision and there is no means of appealing that failure, then the inmate is

25

deemed to have fully exhausted his or her remedies for purposes of the PLRA. *See Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) (collecting cases). Plaintiff's allegations raise questions that cannot be answered at this stage with an undeveloped record. *See Cephas*, 2014 WL 537576, at *4 (quoting *Gaines v. Armor Health Care, Inc.*, No. 12-5663, 2013 WL 6410311, at *3 (E.D.N.Y. Dec. 9, 2013)) ("Inquiries regarding exhaustion…'typically cannot be determined on an undeveloped record.'"). In light of the foregoing analysis, the Court finds that dismissal on the grounds of non-exhaustion is inappropriate at this time. *See Jandres*, 2014 WL 1330655, at *4; *Joseph*, 2016 WL 3033725, at *4 (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003)) ("Where non-exhaustion is not clear from the face of the complaint, a defendant's motion to dismiss pursuant to 12(b)(6) is not an appropriate vehicle.")

### B.   Plaintiff's Claims Arising Under 42 U.S.C. Section 1983

Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" *Rae v. Cty. of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)); *see Corneio v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994)). Section 1983 does not create any independent substantive rights but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85

26

L.Ed.2d 791 (1985), *abrogated on other grounds recognized by Collins v. City of San Diego*, 841 F.2d 337 (9th Cir. 1988); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).  In addition, as discussed in greater detail below, it is well-settled in this Circuit "that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)); *see Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009).

### 1.   *Section 1983 Claims against Defendant Sposato in his Individual Capacity*

Plaintiff sets forth a single allegation concerning Defendant Michael Sposato, the Nassau County Sheriff.  In the section of Plaintiff's form Complaint entitled "Basis for Jurisdiction," when prompted to discuss how each defendant acted under color of state or local law, Plaintiff responded "Armor by denying me prop[]er medical care intentionally the sheriff by allowing them to do so, and by not monitoring its medical Dept."  Compl. § II.D.  Plaintiff does not mention Defendant Sposato in either his "Statement of Claim," *see id.* § III, or his Opposition papers.  *See generally*, Pl.'s Opp'n.

At the outset, the Court notes that a supervisory official like Sheriff Sposato will not be found liable under Section 1983 simply by virtue of his "high position of authority." *Whitenack v. Armor Med.*, No. 13-2071, 2014 WL 5502300, at *5 (E.D.N.Y. Oct. 30, 2014) (quoting *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989)) (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)) (internal quotation marks omitted); *see Morgan v. Dzurenda*, No. 14-966, 2015 WL 5722723, at *6 (D. Conn. Sept. 19, 2015) (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)) ("Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates.").  Rather, liability may generally only be predicated upon the individual defendant's personal involvement

in the purported constitutional violation. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (citing *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122 (2d Cir. 2004)); *Morgan*, 2015 WL 5722723, at *6 (citing *Colon*, 58 F.3d at 873). A complaint asserting a § 1983 claim which does not allege facts establishing the requisite personal involvement "fails as a matter of law." *Gaines*, 2013 WL 6410311, at *3 (citing *Costello v. City of Burlington*, 632 F.3d 41, 48–49 (2d Cir. 2011)).

According to the Second Circuit in *Colon v. Coughlin*, personal involvement may be found when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *Donohue v. Manetti*, No. 15-636, 2016 WL 740439, at *3 (E.D.N.Y. Feb. 24, 2016) (quoting *Colon*, 58 F.3d at 873); *Barrett*, 2014 WL 1220756, at *4 (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). Some courts have questioned the continuing applicability of these factors based upon the heightened pleading requirements set forth in *Iqbal*. *See Bellamy v. Mount Vernon Hosp*., No. 07-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal's* muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."), *aff'd* 387 F. Appx. 55 (2d Cir. 2010)); *Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive

failure to train claims pursuant to section 1983 have not survived" post-*Iqbal*.).  However, the Second Circuit has not yet ruled on the issue.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but declining to resolve the issue); *see also Marom v. City of New York*, No. 15- 2017, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (citing *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (acknowledging that *Iqbal* has "engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon v. Coughlin*")); *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) (declining to decide the "contours of the supervisory liability test" post *Iqbal*), *on reconsideration in part,* No. 15-CV-2017, 2016 WL 5900217 (S.D.N.Y. July 29, 2016).  Notwithstanding the Second Circuit's silence, the majority of courts considering the issue have determined that "even after the U.S. Supreme Court's decision in *Iqbal*, these 'categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.'"  *Hernandez v. Goord*, No. 01-9585, 2013 WL 2355448, at *7 (S.D.N.Y. May 29, 2013) (quoting *Qasem v. Toro*, 737 F. Supp. 2d 147, 152 (S.D.N.Y. 2010)) (citing *Iqbal*, 556 U.S. at 676); *see Ramey v. Perez*, No. 13-00017, 2014 WL 407097, at *4 (S.D.N.Y. Jan. 31, 2014) ("*Colon* remains the standard in this Circuit for deciding whether personal involvement by supervisory officials is sufficiently alleged in the context of the Eighth Amendment."); *see also Morgan v. Comm'r Dzurenda*, No. 14-966, 2015 WL 5722723, at *7 (D. Conn. Sept. 29, 2015) ("Because it is unclear as to whether *Iqbal* overrules or limits *Colon*, the Court will continue to apply the categories for supervisory liability set forth by the Second Circuit."); *Mercier v. Kelly*, No. 10-7951, 2013 WL 4452486, at *6 (S.D.N.Y. Aug. 19, 2013) ("[T]he majority view is where

'the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.'") (quoting *Shepherd v. Powers*, No. 11 Civ. 6860, 2012 WL 4477241, at \*10 (S.D.N.Y. Sept. 27, 2012)) (internal quotation marks omitted) (citing *Bertuglia v. City of New York,* 839 F. Supp. 2d 703, 720–23 (S.D.N.Y. 2012); *Malik v. City of New York,* No. 11-6062, 2012 WL 3345317, at \*14–15 (S.D.N.Y. Aug. 15, 2012)); *Martinez v. Perilli*, No. 09-6470, 2012 WL 75249, at \*4 (S.D.N.Y. Jan. 5, 2012) ("[T]he five *Colon* categories still apply after *Iqbal*.") (citing *Qasem*, 737 F. Supp. 2d at 151; *D'Olimpio v. Crisafi*, 718 F.Supp.2d 340, 345–48 (S.D.N.Y.2010), *aff'd*, 462 Fed. Appx. 79 (2d Cir. 2012); *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009)). Using the principles set forth above, the Court will now consider whether Plaintiff has established the requisite personal involvement of Defendant Sposato in the underlying circumstances.

Plaintiff alleges that Defendant Sposato allowed Armor to deny him medical care and failed to monitor the "medical department." *See* Compl. § II.D. As to the first and second *Colon* factors set forth above, Plaintiff does not allege that Defendant Sposato was directly involved in the alleged constitutional violations or that he failed to remedy the constitutional violations "after being informed of the violation through a report or appeal." Plaintiff may still satisfy the personal involvement requirement by establishing that the defendant was responsible for creating a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, as set forth in the third *Colon* factor. "As currently drafted, the Complaint merely discusses the constitutional violations against Plaintiffs, which is insufficient to assert a policy or custom." *See Tretola v. D'Amico*, No. 13- 5705, 2014 WL 2957523, at \*8 (E.D.N.Y. July 1, 2014); *see also, e.g., Youngblood v. City of N.Y.*, No. 15-3541, 2016 WL

3919650, at *5 (S.D.N.Y. June 27, 2016) (holding that the pro se "Plaintiff's bare allegations of the existence of a custom and policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim[ ]"); *Carpinone v. City of New York*, No. 11-2074, 2012 WL 760073, at *2 (S.D.N.Y. Mar. 9, 2012) ("Plaintiff offers no facts which would render plausible his allegations of a policy or custom within the New York City Police Department that was affirmatively linked to the purported constitutional violations he suffered."). Here, Plaintiff Villafane has therefore failed to establish personal involvement of Defendant Sposato through the third *Colon* factor.

Turning to the fourth *Colon* factor — which appears to be the factor most directly implicated by Plaintiff's allegations — Plaintiff claims that "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 638 (S.D.N.Y. 2016) (*quoting Colon*, 58 F.3d at 873). Courts have held that in order to establish personal involvement in this context, a plaintiff must demonstrate that the defendant "knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff." *Samuels*, 168 F. Supp. 3d at 638 (quoting *Frederick v. Sheahan*, No. 10–6527, 2014 WL 3748587, at *8 (W.D.N.Y. July 29, 2014)) (citing *Kucera v. Tkac*, No. 12–264, 2013 WL 1414441, at *6 (D.Vt. Apr. 8, 2013)) (explaining that the defendants' alleged failure to supervise will satisfy the fourth *Colon* factor if the defendants "knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately ... but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable officer would find necessary to prevent such a

risk[.]"); *Brooks v. Prack*, 77 F. Supp. 3d 301, 313 (W.D.N.Y. 2014) (quoting *Frederick*, 2014 WL 3748587, at *8).

Plaintiff has not provided any salient facts regarding Defendant Sposato's state of mind — whether he knew or should have known that his subordinates were engaging in conduct which violated Plaintiff's or other inmate's constitutional rights.  Plaintiff merely makes the conclusory allegation that Defendant Sposato "allowed" Armor to engage in the purportedly unconstitutional conduct.  Moreover, even if Plaintiff had alleged that Sheriff Sposato was aware of Armor's inaction through his receipt of complaints and failed to act on those complaints, Plaintiff's allegations might still fail to establish the requisite personal involvement.  *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 359 (N.D.N.Y. 2010) (quoting *Rivera v. Goord*, 119 F. Supp. 2d 327, 344–45 (S.D.N.Y.2000)) (citing *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y.1997)) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official 'failed to remedy the violation after learning of it through a report or appeal' or 'allowed the custom or policy to continue after learning of it.'").  As an example, in *Whitenack v. Armor Medical*, No. 13-2071, 2014 WL 5502300 (E.D.N.Y. Oct. 30, 2014),  the incarcerated *pro se* plaintiff filed a civil rights Complaint in the Eastern District of New York under 42 U.S.C. § 1983 against Armor, Sheriff Sposato, Nassau County and "the Clerk of the Court of the Nassau County D.A.'s office."  *Id*. at *1.  As to Sheriff Sposato, plaintiff Whitenack alleged that Sposato failed to "provid[e] medical needs, even after they learned, through grievances, that Armor was not providing proper medical care" and that he "allows Armor to continue practicing [ ] in the [NCCC] * * *."  *Id*. at *6 (alterations in original). The court in *Whitenack* held that "such allegations are insufficient to impose Section 1983 liability upon Sheriff Sposato in a supervisory capacity."  *Id*. (collecting cases).  The court added

that "[s]ince plaintiff 'has pled no facts, beyond [Sheriff Sposato's] presumed receipt of [grievances] and [his] ***position[ ] atop the [NCCC], implicating [him] in any violation described in [his] [amended] complaint [,] [he] has *** failed to plausibly plead [Sheriff Sposato's] personal involvement in any infringement of [his] constitutional rights." *Id.* at *6 (alterations in original) (quoting *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012)). On these grounds, the court granted the defendants' motion seeking dismissal of the plaintiff's Section 1983 claim against Sheriff Sposato. *Id.*

The Court also notes that Plaintiff fails to set forth any detail regarding how Defendant Sposato failed to supervise his subordinates or which subordinates he failed to supervise. *See Brooks*, 77 F. Supp. 3d at 313. "[T]he mere failure to supervise would not be sufficient to establish liability under § 1983." *Tyler v. Dalsheim*, No. 82-2467, 1985 WL 554, at *1 (S.D.N.Y. Apr. 24, 1985); *McRae v. Gentile*, No. 914-00783, 2015 WL 7292875, at *5 (N.D.N.Y. Oct. 20, 2015) (quoting *White v. Fischer*, No. 09-240, 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb. 18, 2010)) (citing *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009)) ("'Vague and conclusory allegations that a supervisor' negligently failed to [ ] supervise subordinate employees do not suffice to establish personal involvement so as to give rise to personal liability."), *report and recommendation adopted*, No. 914-783, 2015 WL 7300540 (N.D.N.Y. Nov. 18, 2015).

The Court finds that Plaintiff's claims against Defendant Sposato fare no better under the fifth *Colon* factor: "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon*, 58 F.3d at 873. For example, in *Holland v. City of New York*, the *pro se* plaintiff alleged that two individual defendants, Commissioner Schriro and Warden Perrino, "'pursued a policy and

33

custom of deliberate indifference' in the 'hiring, training and supervision of' Jennings and the

correction officer defendants." *See Holland v. City of New York*, 197 F. Supp. 529, 551 (2016).

The court determined that plaintiff Holland's claims failed to satisfy the third, fourth and fifth

*Colon* factors. *Id*. In doing so, the court explained that "[t]o the extent that the complaint

attempts to assert a failure-to-supervise claim, moreover, it lacks any hint that [Schriro and

Perrino] acted with deliberate indifference to the possibility that [their] subordinates would

violate [Holland's] constitutional rights." *Holland*, 197 F. Supp. at 551 (quoting *Pettus v.

Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009)). Likewise, in *Erdogan v. Nassau County*, this

Court found the following allegations to be conclusory:

> Specifically, Plaintiff alleges that the "Defendant supervisors,"
> including the Proposed Defendants, "were personally involved in
> both the deprivation of Ms. Erdogan's constitutional rights and in
> creating or condoning the policy or custom of failing to take
> preventative and remedial measures to guard against such
> constitutional deprivations." PAC ¶ 54. Plaintiff further maintains
> that (i) the Defendant supervisors were reckless in their failure to
> supervise Mark Barber, and knew or should have known that Barber
> was sexually abusing female inmates and that the conduct against
> Plaintiff was likely to occur; and (ii) the failure of the supervisory
> defendants to train, supervise, and discipline Barber amounted to
> gross negligence. *Id.* ¶¶ 55–57.

No. 10-5837, 2014 WL 1236679, *16 (E.D.N.Y. March 25, 2014). As a result, this Court held

the plaintiff failed to establish that the defendants were deliberately indifferent or grossly

negligent in supervising subordinates. *Id*. In addition, the plaintiff in *Erdogan* failed to set forth

"sufficient factual averments as required under *Iqbal*." *Id*. at 16 (collecting cases). Here, too,

Plaintiff fails to set forth "sufficient factual averments" to support a claim for deliberate

indifference. Plaintiff "must do more than plead '[c]onclusory allegations or legal conclusions

masquerading as factual conclusions[.]'" *Andino v. Fischer*, 698 F. Supp. 2d 362, 376 (quoting

*Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)) (second alteration added).

34

Since Plaintiff has failed to meet this standard, the Complaint, as currently drafted, fails to allege Defendant Sposato's personal involvement — a deficiency that is fatal to Plaintiff's claim. *Huggins*, 2015 WL 7345750, at *5.

> **2.    Section 1983 Claims against Defendant Sposato in his Official Capacity**

Since Plaintiff did not explicitly state that he is suing Defendant Sposato in his individual capacity, the Court will also consider whether Plaintiff has stated a claim against Defendant Sposato in his official capacity as Sheriff of Nassau County.  In this regard, the Court points out that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity [of which the officer is an agent]."  *Stancati v. Cty. of Nassau*, No. 14-2694, 2015 WL 1529859, at *2 (E.D.N.Y. Mar. 31, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (alterations in original); *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 283–84 (E.D.N.Y. 2010)).  Therefore, a suit against Defendant Sposato in his official capacity is a suit against the Nassau County Sheriff's Department.  It is well established, however, that as an "administrative arm of a municipality," the Nassau County Sheriff's Department is not a suable entity.  *Campbell v. Sposato*, No. 15-1958, 2015 WL 9267222, at *4 (E.D.N.Y. Nov. 17, 2015) (citing Nassau County Charter, DE [14–2], art. XX, §§ 2001, 2003), *report and recommendation adopted*, No. 15-1958, 2015 WL 9273951 (E.D.N.Y. Dec. 16, 2015).  Unlike the Nassau County Sheriff's Department, Nassau County itself is a suable entity.  However, for the same reasons that Plaintiff has failed to set forth a claim against Armor, which is discussed in greater detail below, Plaintiff's Complaint fails to establish a claim for municipal liability.

### 3.   *Section 1983 Claims against Armor*

"Armor is a private company that provides medical services for inmates at the [NCCC] pursuant to a contract with the Nassau County Sheriff's Department."  Declaration of John J. Doody in Support of Defendant Armor's Motion to Dismiss ("Doody Decl.") [19-1] ¶ 3. Generally, to state a claim under Section 1983, the challenged conduct must be attributable at least in part to a person who was acting under color of state law.  *Zamani v. Nassau Cty.*, No. 14-5606L, 2015 WL 9943257, at *4 (E.D.N.Y. Dec. 16, 2015) (quoting *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011)), *report and recommendation adopted*, No. 14-5606, 2016 WL 393934 (E.D.N.Y. Jan. 28, 2016).  However, "a private employer such as Armor may be held liable under Section 1983 for the acts of its employees where the unconstitutional act was authorized or undertaken pursuant to the official policy of the private entity employer and the employer was jointly engaged with state officials or its conduct is chargeable to the state."  *Gaines*, 2013 WL 6410311, at *3; *see Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010); *see generally Filarsky v. Delia*, 566 U.S. 377, 389-90 132 S. Ct. 1657, 1661-65 (2012); *see also Zamani*, 2015 WL 9943257, at *5 (citing *Rojas v. Alexander's Dep't Store, Inc*., 924 F.2d 406, 408 (2d Cir. 1990)); *Cephas*, 2014 WL 537576, at *4 (quoting *Gaines*, 2012 WL 5438931, at *3) ("'Thus, a private employer acting under color of state law may be held liable under Section 1983 for the acts of its employees where the unconstitutional act was authorized or undertaken pursuant to the official policy of the private entity employer and the employer was jointly engaged with state officials or its conduct is chargeable to the state.'"); *Briel v. Sposato*, No. 12-2868, 2012 WL 3697806, at *5 (E.D.N.Y. Aug. 21, 2012).

In the instant case, Armor is the "medical arm" of the NCCC where Plaintiff was detained. *See Cephas*, 2014 WL 537576, at *5.  The Court will therefore assume for purposes of

deciding the instant motion that Armor was acting under color of state law in rendering medical services to Plaintiff at the NCCC.  *Cherry v. Spoato [sic]*, No. 15-1832, 2015 WL 2089588, at *3 (E.D.N.Y. May 5, 2015); *Feder v. Sposato*, No. 11-193, 2014 WL 1801137, at * 6 (E.D.N.Y. May 7, 2014) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)) ("Because Armor was hired to fulfill the state's constitutional obligation to provide necessary medical care for its inmates, [it][was] 'acting under the color of state law' for purposes of Section 1983").

As referenced above, there is no *respondeat superior* liability for § 1983 claims.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Southerland v. City of N.Y.*, 681 F.3d 122, 137 (2d Cir. 2012) (quoting *Monell*, 436 U.S. at 691-94).  Since Plaintiff does not assert claims against any individual employee or official of Armor, Armor may be liable under § 1983 only if Plaintiff "proves that action pursuant to official . . . *policy* of some nature caused a constitutional tort."  *Grafton v. Cty. of Nassau*, No. 15 CV 4564, 2016 WL 8711072, at *9 (E.D.N.Y. July 15, 2016) (emphasis in original) (citing *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990); *Green v. City of New York*, 465 F.3d 65, 82 (2d Cir. 2006)); *Cofield v. Armor Correctional Health Inc.*, No. 12-1394, 2013 WL 2416318, at *4 (E.D.N.Y. May 31, 2013) (citing *Rojas*, 924 F.3d 408).  "Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses [acting under color of state law]."  *Rojas*, 924 F.2d at 409; *see also Bektic–Marrero v. Goldberg,* 850 F. Supp. 2d 418, 432 (S.D.N.Y. 2012) (collecting cases) (holding that *Monell* has been extended to private Section 1983 defendants acting under color of state law).

Here, Plaintiff has not plausibly alleged facts showing that the constitutional deprivations he alleges resulted from an official policy or custom of Armor.  In particular,

> Plaintiff has not alleged facts from which to reasonably infer: (1) the
> existence of a formal policy to deny inmates at the NCCC, including

> himself, their 'basic medical needs' which is officially endorsed by
> Armor; (2) actions taken or decisions made by Armor policymaking
> officials which caused the alleged violation of his civil rights . . . ;
> (3) an Armor practice so persistent and widespread as to practically
> have the force of law; or (4) a failure by Armor policymakers to
> properly train or supervise their subordinates, amounting to
> 'deliberate indifference' to the rights of those who come in contact
> with their employees.

*Whitenack*, 2014 WL 5502300, at *9; *see, e.g.*, *Barrett*, 2014 WL 1220756, at *5 (dismissing

claims against Armor where the plaintiff "neither alleged that an Armor employee violated his

constitutional rights, nor . . . alleged a single fact to support an inference that any action resulted

from an official policy or custom").

The Court turns to prevailing Second Circuit case law involving civil rights complaints to

demonstrate the factual averments and evidentiary support needed to satisfy the pleading

requirements set forth in *Iqbal*.  In *Kucharczyk v. Westchester County*, the *pro se* plaintiff alleged

in his complaint "a *Monell* claim for [a] pattern due to the fact that there [are] several claims

pending in this court based on the same facts [he] allege[s] in [the instant] [C]omplaint."  95 F.

Supp. 3d 529, 543 (S.D.N.Y. 2015) (alterations in original).  In support of his claim, the plaintiff

attached to his complaint a copy of a report issued by the Civil Rights Division of the United

States Department of Justice which memorialized the department's findings resulting from an

investigation of the correctional facility where the plaintiff was detained.

The court in *Kucharczyk* explained that "[t]he Second Circuit and the district courts

within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims

of alleged [constitutional violations] is not probative of the existence of an underlying policy by

a municipality ... or department of corrections."  *Id*. (quoting *Ameduri v. Village of Frankfort*, 10

F.Supp.3d 320, 341 (N.D.N.Y. 2014) (collecting cases).  "Some courts, however, have found that

other lawsuits identified by a plaintiff that concern the same practice and policy at issue in the

38

complaint permit a plausible inference of deliberate indifference." *Id*. (collecting cases).  In *Kucharczyk*, the court concluded that regardless of which approach it adopted, the plaintiff's failure to name the cases and indicate how many were pending rendered his statement conclusory and the court would have to disregard it on that grounds.  *Id*.  Notwithstanding this deficiency, the court determined that the plaintiff had sufficiently alleged a custom or practice by virtue of the DOJ Report appended to his complaint.  *Id*.  According to the report, the facility "'ha[d] a pattern of failing to ... provide inmates with adequate medical ... care," which "violate[d] WCJ inmates' constitutional rights.'"  *Id*.  The report further stated that "'[a]lthough WCJ has instituted a policy for submitting grievances, it is not consistently implemented or effectively publicized,' which posed a risk to inmates that perceived that their serious health needs were being unmet."  *Id*.  Moreover, the court noted, the report was released several years prior to the commencement of the suit, so the facility's policymakers were well aware of the deficiencies.  *Id*. at 544-545.  The court held that based on this information, the plaintiff adequately alleged "a widespread practice or policy of which Defendants were aware to survive Defendants' Motion to Dismiss his *Monell* claim."  *Id*. at 544.

Although the DOJ report persuaded the court in *Kucharczyk* that the plaintiff had successfully pleaded a *Monell* claim, this Court notes that submission of such a report is not necessarily required to satisfy the *Iqbal* pleading standard.  For example, in *Donohue v. Manetti*, No. 15-636, 2016 WL 740439, at *1 (E.D.N.Y. 2016), the *pro se* plaintiff filed a Section 1983 action against Armor, two individual medical professionals and Sheriff Sposato for failing to provide the plaintiff with adequate medical care in violation of the Eighth and Fourteenth Amendments.  More specifically, the plaintiff there alleged that he was denied previously prescribed psychotropic medication, and instead of giving him his prescribed pain medication,

the defendant nurse deliberately gave him medication to which he was allergic. *Id*. at *1-2. The defendants in *Donohue* argued that "two isolated incidents are insufficient to be deemed a policy or custom for the purpose of §1983 liability." *Id*. at *5. The court rejected the defendants' argument, finding that these incidents, in combination with the comments alleged to have been made to the plaintiff by Armor staff (*i.e.* "things are different now and we don't hand out pills anymore – deal with it," it is "Armor's 'policy' not to 'write' (prescribe) pain medication other than N.S.A.I.D.S." and "I wish you would have died") "support[ed] an inference of a policy or custom to deny inmates adequate medical care." *Id*. at *6.

Here, Plaintiff's complaint "concerns only allegedly unconstitutional conduct to which he was subjected." *Joseph v. Nassau County Correctional Facility*, No. 15-7010, 2016 WL 3033725 (E.D.N.Y. May 26, 2016). Moreover, Plaintiff does not set forth any facts which could give rise to an inference that the constitutional deprivations suffered by Plaintiff arose from an official policy or custom. On this basis, and for the foregoing reasons, this Court respectfully recommends to Judge Bianco that Defendants' motion to dismiss be GRANTED to the extent it seeks dismissal of Plaintiff's § 1983 claim against Defendant Sposato and Defendant Armor.

### C.   Plaintiff's Claim for Deliberate Indifference to Medical Needs

Because the Court is recommending to Judge Bianco that the Amended Complaint be dismissed based on Plaintiff's failure to state a valid § 1983 claim against the Defendants, the Court would not normally address whether Plaintiff has adequately stated a claim that Defendants violated his constitutional rights by acting with deliberate indifference to his serious medical needs. However, this Court is also recommending to Judge Bianco that Plaintiff be granted leave to amend his pleadings. Therefore, the Court will now assess Plaintiff's deliberate indifference claim.

### 1.    *Legal Standard for Deliberate Indifference*

Plaintiff asserts that at the time of his arrest and arrival at NCCC he had a broken left forearm.  Compl. § III.C.  Despite repeatedly notifying Defendants of his painful condition, Plaintiff contends that Defendants failed to produce him for the necessary surgery and failed to provide him with prescribed pain medication.  *Id*.  Plaintiff does not specify in his Complaint whether he was a pre-trial detainee or convicted inmate during the time at issue.  Given the temporal proximity between Plaintiff's arrest and the purported unconstitutional conduct, the Court finds it is not unreasonable to assume that Plaintiff was a pre-trial detainee for at least some portion of the time at issue.  *See generally* Compl.  The Eighth Amendment, which prohibits cruel and unusual punishment, governs a convicted prisoner's claims of inadequate medical care.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009); *City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)); U.S. Const. amend. XIV (No "State [shall] deprive any person of life, liberty, or property, without due process of law[.]").  However, a pretrial detainee's claim for inadequate medical care is governed by the Fourteenth Amendment's Due Process Clause.  *Id*.  Since a pre-trial detainee has not been convicted of any crime, the standard applied is different.  *Swanson v. City of New York*, No. 16-3231, 2017 WL 3130322, at *6 (E.D.N.Y. July 21, 2017) (quoting *Darnell*, 849 F.3d at 29); *see City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 244 (1983) ("The Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to [pretrial arrestees] . . . who have been injured while being apprehended by the police.").  "[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a

convicted prisoner." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *City of Revere*, 463 U.S. at 244; *Bryant v. Maffucci*, 923 F.2d 979, 983 (2d Cir. 1991)) ("[T]he due process rights of a . . . [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner[.]").  Accordingly, irrespective of which Amendment is utilized to analyze a plaintiff's claim for inadequate medical care, the plaintiff must show that the defendants were deliberately indifferent to his or her serious medical needs, which involves a two-pronged analysis.  *Grimmett v. Corizon Med. Assocs. of New York*, No. 15-7351, 2017 WL 2274485, at *3 (S.D.N.Y. May 24, 2017).  First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 844, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 279).  Second, the plaintiff must show that the defendant acted with a "sufficiently culpable state of mind."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)); *see Salahuddin*, 467 F.3d at 279-81.

Prior to the Second Circuit's decision in *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29 (2d Cir. 2017), the analysis under the second prong was deemed to be identical to the first regardless of whether the plaintiff's claim was brought under the Eighth Amendment or the Fourteenth Amendment: the plaintiff had to prove that the defendant official was subjectively aware of the harms associated with the constitutional deprivation.  *Darnell*, 849 F.3d at 32 (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)).  However, in *Darnell*, the Second Circuit altered the analysis in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, —— U.S. ——, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015).  In *Kingsley*, the Supreme Court held that "for excessive

force claims brought under the Due Process Clause of the Fourteenth Amendment, 'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable,'" *Darnell*, 849 F.3d at 21 (citing *Kingsley*, 135 S.Ct. at 2473), "reject[ing] the requirement that…a pretrial detainee establish a state of mind component to the effect that the official applied the force against the pretrial detainee 'maliciously and sadistically to cause harm.'" *Id.* at 21 (citing *Kingsley*, 135 S.Ct. 2466, 2475).  In other words, after *Kingsley*, "rather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'"  *Lloyd v. City of New York*, No. 14-9968, 2017 WL 1207838, at *9 (S.D.N.Y. Mar. 31, 2017).  The court in *Darnell* explained that the second prong, which had been referred to as the "subjective prong," is more appropriately described as the "mens rea prong" or "mental element prong."  *Darnell*, 849 F.3d at 32 (internal quotation marks omitted).

The Second Circuit has held that *Kingsley* is applicable beyond the context of excessive force claims.  *Id.* at 35-36 (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc)).  District Courts in this circuit have applied *Kingsley* to claims for deliberate indifference to medical needs.  *See e.g.*, *Grimmett v. Corizon Med. Assocs. of New York*, No. 15-7351, 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017); *Narvaez v. City of New York*, No. 16-1980, 2017 WL 1535386, at *2 (S.D.N.Y. Apr. 17, 2017); *Lloyd v. City of New York*, No. 14-9968, 2017 WL 1207838, at *9 (S.D.N.Y. Mar. 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment."); *Feliciano v. Anderson*, No. 15-4106, 2017 WL 1189747, at *8 (S.D.N.Y.

Mar. 30, 2017); *Gonzalez-Torres v. Newson*, No. 17-00455, 2017 WL 2369369, at *3 (D. Conn. May 31, 2017).

The Court notes that "not every lapse in medical care is a constitutional wrong." *Salahuddin*, 467 F.3d at 279. Thus, if the plaintiff fails to satisfy either prong as set forth in *Darnell*, his or her deliberate indifference claim must be dismissed. *See Grimmett*, 2017 WL 2274485, at *3; *Narvaez*, 2017 WL 1535386, at *5. "Moreover [ ] not every lapse in prison medical care will rise to the level of a constitutional violation.'" *Ruiz v. Homerighouse*, No. 01-0266, 2003 WL 21382896, at *2 (W.D.N.Y. Feb. 13, 2003) (alterations in original) (quoting *Smith v. Carpenter*, 316 F.3d 178, 2003 WL 115223, at *4 (2d Cir. 2003)). "[N]egligence alone is insufficient to make out a deliberate indifference claim" under either the Eighth Amendment or the Fourteenth Amendment. *Grimmett*, 2017 WL 2274485, at *5 (S.D.N.Y. May 24, 2017) (citing *Darnell*, 849 F.3d at 36).

### b.    Objective Prong

Generally, to satisfy the objective prong of the deliberate indifference standard, a plaintiff must show "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)); *see Salahuddin*, 467 F.3d at 279. However, where, as here, "a prisoner receives some care, but allegedly inadequate care, the analysis of whether there was a sufficiently serious medical condition is more complex." *Hardy v. City of New York*, 732 F. Supp. 2d 112, 128 (E.D.N.Y. 2010) (*Salahuddin*, 467 F.3d at 280). In such cases, "the court must focus on whether '*the alleged deprivation* of adequate medical care was sufficiently serious.'" *Id.* (quoting *Salahuddin*, 467 F.3d at 280) (emphasis in original and alteration omitted); *see, e.g., Ferguson v.*

*Cai*, No. 11-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (quoting *Edmonds v. Central N.Y. Psychiatric Ctr.*, No. 10-5810, 2011 WL 3809913, at *4 (S.D.N.Y. Aug. 25, 2011) (collecting cases); *DiChiara v. Wright*, No. 06-6123, 2011 WL 1303867, at *6 (E.D.N.Y. Mar. 31, 2011). "[I]f the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (internal quotation marks and alterations omitted). In other words, "it's the particular risk of harm faced by the prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant" for purposes of establishing a deliberate indifference claim. *Smith*, 316 F.3d at 186 (citing *Chance*, 143 F.3d at 702–03); *see Hardy*, 732 F. Supp. 2d at 128 (quoting *Salahuddin*, 467 F.3d at 280) ("In effect, a court must determine 'whether the inadequacy in medical care [was] sufficiently serious' by examining the harm plaintiff was exposed to as a result of defendant's conduct."). "A defendant's delay in treating an ordinarily insignificant medical condition can become a constitutional violation if the condition worsens and creates a substantial risk of injury. Conversely, delay in treating a life-threatening condition may not violate the Eighth [or Fourteenth] Amendment if the lapse does not cause any further harm beyond that which would occur even with complete medical attention." *DiChiara*, 2011 WL 1303867, at *7 (citing *Graham v. Wright*, No. 01–9613, 2004 U.S. Dist. LEXIS 15738, at *13 (S.D.N.Y. Aug. 9, 2004) (internal quotation marks omitted).

To determine whether a delay in treatment is objectively serious, the court must "look to 'all relevant facts and circumstances.'" *Id.* (quoting *Smith*, 316 F.3d at 187). In general,

"[w]here temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Ferguson v. Cai*, No. 11-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (citing *Salahuddin*, 467 F.3d at 281; *Chance*, 143 F.3d at 702; *Hathaway*, 37 F.3d at 65, 67). Although "the actual medical consequences that flow from the alleged denial of care" will often "be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm," a deliberate indifference claim "may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm." *Smith*, 316 F.3d at 187-88 (citing *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)) (internal citations omitted). However, "the absence of present physical injury will often be probative in assessing the risk of future harm." *Id.* at 188; *see DiChiara*, 2011 WL 1303867, at *7 (citing *Smith*, 316 F.3d at 187).

Here, as discussed earlier in this Report and Recommendation, Plaintiff alleges that despite the directives of outside medical professionals that he be immediately produced for surgery to repair his broken left forearm, it appears that Defendants were delayed in getting Plaintiff the requisite medical care. Because of this delay, doctors were forced to rebreak Plaintiff's arm and install metal plates and screws. Plaintiff alleges that he is in constant pain and does not have full use of his left wrist. Considering Plaintiff's broken left forearm in the abstract, the Court finds that it constitutes a sufficiently serious medical condition. *See Mendez v. Acting Sheriff, Nassau Cty. Corr. Ctr.*, No. 10-1960, 2010 WL 2629781, at *2 (E.D.N.Y. June 28, 2010) (citing *Henderson v. Doe*, No. 98-5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999) (broken finger does not rise constitute a serious injury); *Neitzke v. Williams*, 4910 U.S. 319, 109

46

S.Ct. 1827, 104 L.Ed.2d 338 (1989) (broken hip constitutes a serious injury); *Bryan v. Endell*, 141 F.3d 1290, 1293 (8th Cir.1998) (broken hand constitutes a serious injury); *Durham v. Nu' Man*, 97 F.3d 862, 869 (6th Cir.1996) (broken arm constitutes an "undeniably serious" injury); *Benning v. Ehrits*, No. 08–CV–0815, 2009 WL 2982973, at *1 (N.D.N.Y. Sept. 14, 2009) (broken arm constitutes a serious injury); *Hernandez v. Harrison*, No. 07–7489(JVS)(JC), 2008 WL 4836046, at *13 (C.D.Cal. Oct. 29, 2008) (broken leg constitutes a serious injury)) (broken knee rises to the level of "sufficiently serious"); *see Vining v. Dep't of Correction*, No. 12-3267, 2013 WL 2036325, at *4 (S.D.N.Y. Apr. 5, 2013) ("Indeed, numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones.") (collecting cases).

Moreover, a serious medical condition has been deemed to include "'condition[s] of urgency, [ ] that may produce death, degeneration, or extreme pain[.]" *Hathaway*, 99 F.3d at 553 (quoting *Schermerhorn v. Local 100, Transp. Workers Union of Am., AFL-CIO*, 91 F.3d 316, 320 (2d Cir. 1996)) (quotation marks and citation omitted). "[I]t has also been interpreted to include 'less serious denials [of medical attention] which cause or perpetuate pain.'" *Vining v. Dep't of Correction*, No. 12-3267, 2013 WL 2036325, at *3 (S.D.N.Y. Apr. 5, 2013) (quoting *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted)). However, the fact that Plaintiff suffers from a serious medical condition is not sufficient, by itself, to sustain his deliberate indifference claim based on the delay of his surgery; instead, Plaintiff must allege facts which plausibly show that the delay was objectively serious.

Viewing the facts in the light most favorable to Plaintiff and drawing every reasonable inference in his favor, the Court cannot, at this stage in the litigation and on this record, determine as a matter of law whether the delay in Plaintiff's surgical procedure was objectively

47

serious.  Although Plaintiff does not set forth the exact date upon which he ultimately had the surgery, the Court makes the assumption based on the information contained in the pleading that the surgery was delayed for approximately two months.

### c.    *Mens Rea* **Prong**

The Court finds that Plaintiff's allegations state enough information to satisfy the second prong of the deliberate indifference pleading standard, which requires that Defendants acted with a sufficiently culpable state of mind.  *See Darnell*, 849 F.3d at 35; *see also Grimmett*, 2017 WL 2274485 (quoting *Chance*, 143 F.3d at 702) ("Second, the defendant must have acted with deliberate indifference, or a 'sufficiently culpable state of mind.'"); *Hathaway*, 37 F.3d at 66. "Deliberate indifference requires more than negligence."  *Hathaway*, 99 F.3d at 66 (quoting *Farmer*, 114 S.Ct. at 1978).  As noted, the Second Circuit in *Darnell* explained that in order for a pre-trial detainee to establish a claim for deliberate indifference under the Fourteenth Amendment's Due Process Clause,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

It follows that the defendant official need not "have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm."  *Narvaez*, 2017 WL 1535386, at *6 (citing *Darnell*, 2017 WL 676521, at *14).  The Court must ask "whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.  *Lloyd*, 2017 WL 1207838, at *9; *Darnell*, 849 F.3d at 35.  A pre-trial detainee may establish a violation of the Fourteenth Amendment where "officials deliberately delayed care as a form of punishment, ignored a life threatening and fast-degenerating condition for three days,

or delayed major surgery for over two years.'" *Ford v. Rodriguez*, No. 15-4909, 2016 WL 6776345, at *4-5 (S.D.N.Y. Nov. 16, 2016) (quoting *Frith v. City of New York*, 2016 WL 4705155, at *2 (S.D.N.Y. Aug. 25, 2016)), *report and recommendation adopted*, No. 15-4909, 2017 WL 58843 (S.D.N.Y. Jan. 5, 2017).  Finally, it is well-established that "negligence, even if it amounts to medical malpractice, does not constitute a constitutional violation." *Thomas v. Nassau County Correctional Center*, 288 F. Supp. 2d 333, 338 (E.D.N.Y. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976)).

Here, Plaintiff alleges that on September 14, 2013, the examining physician at Nassau University Medical Center advised that Plaintiff would need to be returned three days later — on September 17, 2013 — for surgery.  *See* Compl. § III.C.  According to Plaintiff, defendants failed to do so and also failed to give Plaintiff the prescribed pain medication.  *Id*.  Plaintiff further contends that on September 24, 2013, a visiting orthopedist expressed shock that Plaintiff had not received any surgery and noted on Plaintiff's chart that it was extremely urgent that he receive surgery.  *Id*.  On October 9, 2013, plaintiff was transported to the Nassau University Medical Center where he was advised that his arm was in fact broken and that because he had not received the necessary care his arm would have to be rebroken.  *Id*.  Plaintiff further alleges that on November 5, 2013, he was transferred to the Metropolitan Detention Center.  *Id*.  Officials transferred Plaintiff to Brooklyn Medical Center and Kingsbrook Hospital "from 2014 through 2015."  *Id*.  It was the Brooklyn Medical Center where Plaintiff ultimately received the surgery he needed.  *Id*.  Doctors rebroke Plaintiff's arm and installed two metal plates along with metal screws in his arm.  Plaintiff represented that he is in constant pain and does not have 100% use of his left wrist.  *Id*.

49

Taking all of Plaintiff's allegations as true, as the Court is required to do, and drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff has sufficiently pleaded that Defendants were fully aware Plaintiff's left forearm was broken and that he required surgery right away.  Moreover, Defendants were notified that because they delayed Plaintiff's treatment, Plaintiff's arm would have to be rebroken.  Yet Defendants still did not produce Plaintiff for surgery.  Further, throughout this period of time, Plaintiff repeatedly complained of pain but defendants refused to provide him with the prescribed pain medication.  The Court finds that Armor knew, or should have known that its conduct "posed an excessive risk to health or safety." *Lloyd*, 2017 WL 1207838, at *9; *Darnell*, 849 F.3d at 35

### D.    Plaintiff's Fifth Amendment Claim

Because the Court recommends to Judge Bianco that the Amended Complaint be dismissed based on Plaintiff's failure to state a valid § 1983 claim against the Defendants, the Court generally would not need to address whether Plaintiff adequately alleged a violation of Plaintiff's Fifth Amendment rights.  However, in light of the fact that the Court also recommends that Plaintiff be granted leave to amend his pleadings, the Court will undertake a brief analysis of Plaintiff's Fifth Amendment claim.

The Fifth Amendment states as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.  "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from

depriving any person of property without 'due process of law.'"  *Dusenbery v. United States*, 534

U.S. 161, 167, 122 S. Ct. 694, 699, 151 L. Ed. 2d 597 (2002).  Here, Plaintiff's Complaint has

been filed against a state official and a private contractor acting under color of state law, not the

federal government.  As a court in the Second Circuit has observed, in such circumstances,

"[Plaintiff's] appeal to rights secured under the Fifth Amendment is misplaced and dismissed."

*Molina v. New York*, 697 F. Supp. 2d 276, 284 (N.D.N.Y. 2010).  Here, Plaintiff's Fifth

Amendment claim must be dismissed, and no amount of re-pleading will cure this problem.

### E.    Plaintiff's PLRA Claim and Equal Protection Claim

Plaintiff further alleges that Defendants' conduct constitutes a violation of the PLRA.

Compl. § II.B.  Plaintiff does not specify which provision of the PLRA his claim arises under.

Since Plaintiff also asserts a violation of the Equal Protection Clause, which prohibits

discriminatory treatment, the Court will interpret the instant claim as one under 42 U.S.C.

§ 1997(d), which sets forth the following prohibition:  "No person reporting conditions which

may constitute a violation under this subchapter shall be subjected to retaliation in any manner

for so reporting."  *See Mumin v. Johnson*, No. 07-4973, 2008 WL 976268, at *3 (E.D.N.Y. Apr.

9, 2008).  However, Section 1997(d) does not provide a plaintiff with a private cause of action.

*Id*.  Therefore, the Court will construe this claim as one arising under the Equal Protection

Clause.

As stated in the context of Plaintiff's Fifth Amendment claim above, the Fourteenth

Amendment to the United States Constitution sets forth prohibitions applicable to the States.

The Equal Protection Clause of the Fourteenth Amendment states:

> All persons born or naturalized in the United States, and subject to
> the jurisdiction thereof, are citizens of the United States and of the
> State wherein they reside. No State shall make or enforce any law
> which shall abridge the privileges or immunities of citizens of the

> United States; nor shall any State deprive any person of life, liberty,
> or property, without due process of law; nor deny to any person
> within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV (emphasis added). "[T]he Fourteenth Amendment prohibits the selective adverse treatment of individuals by government actors 'compared with others similarly situated' if such selective treatment is based on 'impermissible considerations such as race ... or malicious or bad faith intent to injure a person.'" *Castro-Sanchez v. N.Y.S. Dep't of Corr. Servs.*, No. 10-8314, 2012 WL 4474154, at *3 (S.D.N.Y. Sept. 28, 2012) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  Here, Plaintiff has not alleged that he was treated differently from other similarly situated individuals, whether by virtue of his race, or the fact that he filed a grievance or sick call request, or on any other grounds.  *See generally*, Compl. Plaintiff's PLRA/Equal Protection Clause claim must therefore be dismissed and this Court respectfully makes that recommendation to Judge Bianco.  *See id*. (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)) ("If a prisoner claims that he received different treatment by prison officials because of a protected characteristic, he must plead 'that he was treated differently than others similarly situated' and that the differential treatment was "a result of intentional or purposeful discrimination.'")

## V.    LEAVE TO RE-PLEAD

"When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005) (citing *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them")).  The Second Circuit has stated that "[w]hen a motion to dismiss is granted,

the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citing *Ronzani v. Sanofi S.A*., 899 F.2d 195, 198 (2d Cir. 1990)), *overruled on other grounds by Gonzaga v. Doe*, 536 U.S. 273 (2002); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  The Court should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend if a valid claim could be stated.  *Clifton v. Hra Nyc Govt*, No. 16-1753, 2016 WL 4203486, at *1 (E.D.N.Y. Aug. 9, 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Even under this liberal standard, however, the court may decline to provide the plaintiff with an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims" and therefore "any attempt to amend the pleading . . . would be futile." *Shorter v. Rice*, No. 12-0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012); *see Cuoco*, 222 F.3d at 112 (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile. Such a futile request to replead should be denied.").

Based on the foregoing case law, the arguments contained in all the motion papers, and the Court's analysis of Plaintiff's claims set forth *supra* in this Report and Recommendation, the Court recommends to Judge Bianco that although the current allegations are deficient, there is some "indication that a valid claim might be stated" against Defendants Sposato and Armor. *Cuoco*, 222 F.3d at 112 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)) (internal quotation marks omitted).  The Court further notes that Plaintiff did not have access to his medical records at the time he filed the Complaint, and those records have since been provided to Plaintiff pursuant to this Court's May 1, 2017 Order.  *See* DE 36.  Accordingly, the Court respectfully recommends to Judge Bianco that Plaintiff be granted leave to re-plead his

claim for individual liability against Defendant Sposato and his *Monell* claim against Armor, as well as his claim for deliberate indifference to serious medical needs against those defendants.

Since Plaintiff is now in possession of his medical records and legible copies of Defendants' uncited opinions, Plaintiff can utilize the information contained in these documents in redrafting his Complaint.[2]

## VI. CONCLUSION

Based on the foregoing findings, the Court respectfully recommends to Judge Bianco that Defendants' motion to dismiss be GRANTED, in part, and DENIED, in part. In particular, the Court recommends that the motion be DENIED insofar as it seeks dismissal based on Plaintiff's failure to exhaust his administrative remedies, and that the motion otherwise be GRANTED. The Court further recommends that Plaintiff's Complaint be DISMISSED, without prejudice, and with leave to amend.

## VII. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See*

---

[2]    In light of Plaintiff Villafane's continued assertion of his need to obtain the transcript of his September 2013 arraignment before Magistrate Judge Brown, this Court secured the transcript and is attaching a copy to this Report and Recommendation to be served upon Plaintiff.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *see also Johnson v. Woods*, 426 F. App'x 10, 11 (2d Cir. 2011) (citing *Cephas*, 328 F.3d at 107) ("A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal."); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996) (citing *McCarthy v. Manson*, 714 F.2d 234, 237 n.2 (2d Cir. 1983)).

**Defendants' counsel is directed to serve a copy of this Report and Recommendation upon the *pro se* Plaintiff forthwith by overnight mail and first class mail and to file proof of such service on ECF.**

**SO ORDERED**.

Dated: Central Islip, New York
August 22, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

Case 2:16-cv-03674-JFB-AKT    Document 53    Filed 08/22/17    Page 56 of 63 PageID #:
Case 2:13-mj-00445-EXT    Document 9    Filed 08/01/17    Page 1 of 8 PageID #: 12
354

**FILED**
**CLERK**

JGK 08/01/2017
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

1          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                    :
4    UNITED STATES OF AMERICA,       :
                                    :   13-MJ-00445 (DRH)
5              v.                    :
                                    :   September 13, 2013
6    CARLOS VILLAFANE,              :   Central Islip, New York
                                    :
7                   Defendant.      :
                                    :
8    --------------------------------X

9
          TRANSCRIPT OF CRIMINAL CAUSE FOR INITIAL APPEARANCE
10             BEFORE THE HONORABLE GARY R. BROWN
               UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13
     For the Government:        UNITED STATES ATTORNEY
14                              BY:  LARA TREINIS GATZ, ESQ.
                                ASSISTANT U.S. ATTORNEY
15

16
     For the Defendant:         GLENN OBEDIN, ESQ.
17                              320 Carleton Avenue
                                #2500
18                              Central Islip, New York 11722

19

20
     Court Transcriber:         SHARI RIEMER, CET-805
21                              TypeWrite Word Processing Service
                                211 N. Milton Road
22                              Saratoga Springs, New York 12866

23

24

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

Case 2:16-cv-02367-JFB-AKT   Document 53   Filed 09/22/17   Page 57 of 63 PageID #:
Case 2:13-mj-00445-AKT   Document 9   Filed 08/09/12   Page 2 of 57 Page ID #: 18
355

2

1  (Proceedings began at 3:56 p.m.)

2         THE CLERK:  Calling Case 13-MJ-445, <u>U.S. v. Carlos</u>

3  <u>Villafane</u>.

4         Counsel, please state your appearances.

5         MS. GATZ:  Good afternoon, Your Honor.  Lara Treinis

6  Gatz for the United States.

7         THE COURT:  Good to see you, Ms. Gatz.

8         MS. GATZ:  You too, Your Honor.

9         MR. OBEDIN:  Good afternoon, Your Honor.  Glenn

10  Obedin for Mr. Villafane.

11         THE COURT:  Mr. Obedin, how are you, sir?

12         MR. OBEDIN:  I'm fine.  Thank you.

13         THE COURT:  Ms. Gatz, we're here on initial

14  appearance; is that right?

15         MS. GATZ:  Yes, Your Honor.

16         THE COURT:  All right.  Good.  So, Mr. Villafane, I

17  understand we're here to go through some of your rights, talk

18  about the complaint, talk about the propriety of bail if any.

19  But the first question I have for you is have you spoken to

20  your attorney, have you had enough time to talk to Mr. Obedin

21  about what's going on here?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Do you understand what's going on?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Good.  So you've been charged in a

3

1  complaint with conspiring to distribute oxycodone. Without

2  telling me whether or not you did it, just tell me whether or

3  not that you understand that that's what the charge is.

4          THE DEFENDANT:  Yes, sir, I understand, Judge.

5          THE COURT:  So let's talk about statements.  First

6  of all, you have the right to be represented by counsel.  I

7  find that you do not have sufficient assets to afford counsel.

8  So we appointed Mr. Obedin, a fine member of the bar to defend

9  you in this action and the court will pay for his services.

10 Do you understand that?

11         THE DEFENDANT:  Yes, sir, I do.

12         THE COURT:  He remains your attorney even though the

13 court is paying.  Do you understand?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  If at any time you happen to come into

16 some money and you want to hire your own attorney, you have

17 that right too.  Do you understand that?

18         THE DEFENDANT:  Yes, sir, I do.

19         THE COURT:  Very good.  So let's go back to

20 statements.  So you're not required to make any statements

21 about the matters charged in the complaint to anyone.  If

22 you've made a statement in the past you have the right -- you

23 don't have to continue that.  If you start one in the future

24 you don't have to -- you can stop at any time.  You simply put

25 up your hand and say I don't want to talk about this.  Do you

Case 2:13-mj-00445-EKT   Document 9   Filed 08/09/17   Page 5 of 9 PageID #: 16

4

1    understand that?

2              THE DEFENDANT:  Yes, sir, I do.

3              THE COURT:  The reason we make a big deal about

4    statements is because the statements that you make can be used

5    against you in the trial of this matter.  Do you understand?

6              THE DEFENDANT:  Yes, sir, I do.

7              THE COURT:  And of course the fact that I say don't

8    talk to anybody doesn't mean don't talk to Mr. Obedin.  You

9    should talk to your attorney.  You understand that, right?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  All right.  Good.  Very good.  Ms. Gatz,

12   what is the Government's position on bail?

13             MS. GATZ:  Your Honor, the Government is asking for

14   a permanent order of detention in this matter.  The defendant

15   has what I can only describe as a very lengthy criminal

16   history.  He also is a chronic substance abuser.  He currently

17   is attending a methadone maintenance program.  His heroin

18   problem extends back it looks like over a ten-year period.

19             Given a combination of the instant offense, his

20   prior arrests and convictions, his substance abuse history and

21   his history of failing to comply with court directives,

22   specifically violations of probation and parole and release,

23   the Government is asking for a permanent order of detention.

24             I just note this is a presumption case.

25             THE COURT:  That was my next question, Ms. Gatz.  You

Case 2:16-cv-02674-JFB-AKT   Document 53   Filed 09/22/17   Page 60 of 63 PageID #:
Case 2:13-mj-00445-EK   Document 9   Filed 08/09/12   Page 5 of 8 PageID #:
358

5

1   predicted that very well.

2           Mr. Obedin, what do you have to say?

3           MR. OBEDIN:  Yes.  Thank you, Your Honor.  I had an

4   opportunity to speak to Mr. Villafane.  We do not have any

5   type of bail package to present at this time.  So I will just

6   ask that we retain our right to present a package if one

7   becomes available.

8           THE COURT:  All right.  Very good.  I find that the

9   defendant has not rebutted the presumption in this case.  I

10  also find that I agree with Pretrial Services that no

11  condition or combination of conditions that have been

12  presented to the court would assure the defendant's return and

13  the safety of the community.

14          However, I note that this is without prejudice to

15  presenting a bail package should one become available.

16          MS. GATZ:  Your Honor, I ask that you note to the

17  jail that he continued to receive methadone as necessary or at

18  least be screened to see if that's necessary given that he's

19  regularly taking methadone.

20          THE COURT:  That's an excellent idea and while we're

21  on that subject and I'm doing a medical order anyway, Mr.

22  Obedin, is there any other medical conditions that I should

23  alert the jail to?

24          MR. OBEDIN:  Yes.  Thank you, Judge.  Ms. Gatz

25  jumped in before I had an opportunity and I thank her.  Mr.

Case 2:16-cv-02674-JFB-AKT   Document 53   Filed 08/22/17   Page 61 of 63 PageID #:
Case 2:13-mj-00445-EKS   Document 9   Filed 08/09/12   Page 6 of 63 PageID #: 17
359

6

1   Villafane also has a series of medical issues.  He has various

2   metal plates and screws within his body that still give him

3   trouble.  He indicates that his left wrist is broken.

4            THE COURT:  Currently broken?

5            MR. OBEDIN:  Currently broken he indicates.  I'd

6   certainly like that checked when he gets to the facility.

7            THE COURT:  I'm going to note there's a wrist injury

8   because I --

9            MR. OBEDIN:  Yes, thank you.  And whatever

10  medication along with the methadone would be appropriate for

11  Mr. Villafane given his various physical conditions.

12           THE COURT:  Any other medications?

13           MS. GATZ:  It appears he's still taking oxycodone.

14           MR. OBEDIN:  Well, Mr. Villafane does have diabetes.

15  He does take medicine for that.

16           THE COURT:  All right.  So I'll note diabetes.  I'm

17  not going to suggest that they give him oxycodone.  I don't

18  think that may be the recommended course but that's just my

19  guess.

20           So I'll send over a medical evaluation order which

21  will alert the jail authorities to those various issues.

22           What is your preference concerning a preliminary

23  hearing?

24           MR. OBEDIN:  We will waive that, Your Honor.

25           THE COURT:  All right.  Mr. Villafane, just to make

Case 2:16-cv-02674-JEB-AKT   Document 53   Filed 08/22/17   Page 62 of 63 PageID #:
Case 2:13-mj-00445-EKS   Document 9   Filed 08/03/17   Page 8 of 8 PageID #:16
360

7

1  sure you understand.  The Government is required to go to

2  what's called a preliminary hearing to present certain

3  evidence.  Your attorney is suggesting that you're willing to

4  waive that.  Is that right, sir?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Very good.  So that will be waived.

7          Was there any property seized at the time of arrest?

8          MS. GATZ:  My understanding, Your Honor, is that the

9  officers arrested him in his apartment.  So I don't believe

10 there was any property on his person and I'll confirm that.

11         Just his belt, Your Honor.

12         THE COURT:  Okay.  Mr. Villafane, did they take

13 anything from you when they arrested you?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  Very good.  Anything else we need to do

16 today, Ms. Gatz?

17         MS. GATZ:  Nothing from the Government, Your Honor.

18 Thank you.

19         MR. OBEDIN:  Nothing further, Your Honor.  Thank

20 you.

21         THE COURT:  Good luck to you, sir.  We're adjourned.

22 (Proceedings concluded at 4:02 p.m.)

23                      * * * * *

24

25

Case 2:16-cv-02674-JFB-AKT   Document 53   Filed 08/22/17   Page 63 of 63 PageID #:
Case 2:13-mj-00445-ETS   Document 9   Filed 08/09/17   Page 8 of 8 PageID #: 10
361

8

1          I certify that the foregoing is a court transcript from

2    an electronic sound recording of the proceedings in the above-

3    entitled matter.

4                              _____

5

6                                  Shari Riemer, CET-805

7    Dated:  August 1, 2017